## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF MICHIGAN
### Southern Division

| | | |
|---|---|---|
| CRYSTAL CHAPMAN on behalf of herself and others similarly situated, | : | CIVIL ACTION FILE NO. 22-cv-10229 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Honorable Laurie J. Michelson |
| NATIONAL HEALTH PLANS & BENEFITS AGENCY, LLC | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## <u>STATEMENT OF ISSUES PRESENTED</u>

1. Does the Plaintiff's complaint sufficiently allege Article III harm after she received unsolicited telemarketing calls on a number she registered on the National Do Not Call Registry from a company she had no relationship with and that her lawyer previously told to stop calling her?

   Plaintiff's Response: Yes.

2. Does the Plaintiff's complaint put the Defendant on adequate notice of a violation of the TCPA's regulations against pre-recorded messages when she provides the date and content of the pre-recorded message sent to her?

   Plaintiff's Response: Yes.


3. Does the Plaintiff's complaint put the Defendant on adequate notice of a violation of the TCPA's regulations calling numbers on the National Do Not Call Registry when she provides the dates and specific content of the calls received, the intent of the marketing campaign, as well as the fact that other individuals have complained about those calls and sued the Defendant for similar conduct previously?

   Plaintiff's Response: Yes.

## STATEMENT OF MOST APPROPRIATE AUTHORITY

### Federal Statutes

47 U.S.C. § 227

### Federal Regulations

47 C.F.R. §§ 64.1200

### Federal Cases

*Susinno v. Work Out World Inc.*, 862 F.3d 346 (3d Cir. 2017).

*Evans v. Nat'l Auto Div., L.L.C.*, No. 15-8714, 2016 U.S. Dist. LEXIS 29348 (D.N.J. Mar. 7, 2016)

*Kane v. Nat'l Action Fin. Servs., Inc.,* 2011 U.S. Dist. LEXIS 141480 (E.D. Mich. Nov. 7, 2011)

*Toney v. Quality Res., Inc.,* 75 F. Supp. 3d 727 (N.D. Ill. 2014)

*Bower v. Nat'l Admin. Serv. Co., LLC,* 2022 U.S. Dist. LEXIS 48027 (M.D. Pa. Mar. 17, 2022)

## <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

Plaintiff Crystal Chapman ("Plaintiff" or "Mrs. Chapman") took the affirmative step of registering her telephone number on the National Do Not Call Registry, which is designed to prevent the receipt of unwanted telemarketing calls. Despite her registration, the defendant National Health Plans & Benefits Agency, LLC ("National Health Plans" or "Defendant") placed at least for automated telemarketing calls to her residential cellular telephone number. National Health Plans has now moved to dismiss on two bases, both of which should be denied.

First, Mrs. Chapman has pled sufficient Article III harm when her telephone number received pre-recorded telemarketing calls after she had registered that number on the National Do Not Call Registry. The Plaintiff has alleged that her telephone line received multiple unwanted and invasive telemarketing calls in violation of the Telephone Consumer Protection Act. She has alleged that she ignored the first few calls. After the calls continued, her husband then answered the phone to see who kept calling. Mrs. Chapman alleges that she then had her lawyer send a letter to the Defendant to get the calls to stop. The Defendant acknowledged that letter, but called her again. These allegations clear the "low hurdle" that is Article III standing, as recognized by every appellate court to consider the issue in the context of pre-recorded telemarketing calls under the TCPA.

Second, Mrs. Chapman has sufficiently alleged each of her two claims under the TCPA. First, Mrs. Chapman details the specifics of the pre-recorded message that was answered by her husband and its automated nature. Furthermore, the fact that other individuals have complained about the same calls from the same Caller ID number supports the sufficiency of her allegations, as well as the fact that the Defendant has previously been sued in this Court for the same conduct. Similarly, Mrs. Chapman does not need to have answered and listened to the scripted telemarketing pitch on each of the unsolicited calls she received in order to state a claim for a violation of the TCPA's restriction against calling numbers on the National Do Not Call Registry. Indeed, as she has alleged that she received four telemarketing calls on her residential number that has been registered on the National Do Not Call Registry, and alleged the intent of those marketing calls, she has sufficiently stated a claim.

As such, the Defendant's motion should be denied.

## **BACKGROUND AND PLAINTIFF'S ALLEGATIONS**

As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls— 3.7 million complaints in 2019 alone. The States likewise field a constant barrage

of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

With respect to the National Do Not Call Registry, the Fourth Circuit Court of Appeals has explained, "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227)…The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list….Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their

domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

This case involves a campaign by National Health Plans who engages in telemarketing to market insurance services through unsolicited pre-recorded telemarketing calls without the prior express consent of the call recipients. It does so to telephone lines, like the one owned by Mrs. Chapman, that have taken the affirmative step of placing their telephone number on the National Do Not Call Registry.

Indeed, National Health is no stranger to TCPA litigation, as it has previously been sued for allegations of violating the Telephone Consumer Protection Act based on its telemarketing conduct. *See Rosenbloom v. National Health Plans & Benefits Agency, LLC*, Civil Action No.  2:19-cv-13261-LVP-APP (E.D. Mi.). Mrs. Chapman, a resident of New York, maintains a residential cellular telephone number of (585) 414-XXXX. *See* ECF No. 1 at ¶ 23. It is her number. *Id.* She is the subscriber on the telephone account that owns that number. The number is assigned to a cellular telephone service and was so assigned at the time of the calls at issue. *Id.* at ¶ 24. Furthermore, that number has been on the National Do Not Call Registry for more than 30 days prior to the date the calls were received and it has not been removed from the Registry since that time. *Id.* at ¶ 25.

Mrs. Chapman uses the number for personal, residential, and household reasons. *Id.* at ¶ 26. The number is not associated with any business. *Id.* at ¶ 27. Despite this, the Plaintiff's number received telemarketing calls from the Defendant National Health Plans on November 6, December 1 and 28, 2021 as well as February 2, 2022. *Id.* ¶ 28. All of the calls were made from the same Caller ID number, (248) 359-8321, which is a Michigan Caller ID number, where the Defendant is located. *Id.* at ¶ 29-30. Other individuals have complained about receiving telemarketing spam calls from this Caller ID number related to healthcare products like those the Defendant offers. *See* https://www.callercenter.com/248-359-8321.html (Last Visited February 2, 2022). *Id.* at ¶ 31.  Not recognizing the number that called, the first two telemarketing calls were rejected. *Id.* at ¶ 32. However, in order to determine who was calling the number on the National Do Not Call Registry, the Plaintiff's husband answered the third call. *Id.* at ¶ 33.

The call began with a pre-recorded message, which asked if the individual was over 65 years old and requested an automated response. *Id.* at ¶ 34-35. The pre-recorded message asked if the call recipient was interested in a family or individual quote and requested an automated response. *Id.* at ¶ 36. Mr. Chapman was then transferred to the Defendant and spoke to one of their employees. *Id.* at ¶

37. The caller then offered Mr. Chapman insurance services from the Defendant. *Id.* at ¶ 38. Mr. Chapman then terminated the call. *Id.* at ¶ 39.

After receiving these calls, counsel for the Plaintiff wrote to the Defendant informing them to stop. *Id.* at ¶ 40. The Defendant indicated that the number would no longer be contacted on January 27, 2022. *Id.* at ¶ 41. Despite this claim, the Defendant called the Plaintiff again on February 2, 2022. *Id.* at ¶ 42. Like all of the Defendant's automated telemarketing efforts, these calls were made in an attempt to solicit new insurance customers for the Defendant. *Id.* at ¶ 43.

While National Health Plans claims that the TCPA has been subject to litigation abuse relying on an *amicus* submission by an interest group, it has been widely supported by courts. Indeed, "[i]n the context of the TCPA, the class action device likely is the optimal means of forcing corporations to internalize the social costs of their actions." *Bee, Denning, Inc. v. Capital Alliance Grp.*, 310 F.R.D. 614, 630 (S.D. Cal. 2015) (certifying two classes). As one federal appeals court observed, "[c]lass certification is normal [in TCPA cases] . . . because the main questions . . . are common to all recipients." *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.,* 821 F.3d 992, 998 (8th Cir. 2016), *quoting Ira Holtzman, C.P.A. & Assoc., Ltd. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013).

National Health Plants, itself a repeat player in TCPA litigation, decries the fact that Mrs. Chapman has previously filed TCPA lawsuits. Of course, by not claiming that Mrs. Chapman loses standing purely based on the fact that she has received multiple unlawful calls from different companies and sought to vindicate her rights, National Health Plans is forced to acknowledge that courts brush aside the perverse notion that one who has been the victim of several different companies' illegal robocalls may not bring several different suits, as courts have rejected the concept that a defendant should get "a 'free pass' simply because they robo-dialed a caller aware of his rights under the TCPA." *Perrong v. Victory Phones LLC*, No. 20-5317, 2021 U.S. Dist. LEXIS 132404, at *10-11 (E.D. Pa. July 15, 2021).

## ARGUMENT

### 1.  The Plaintiff has Alleged Sufficient Article III Harm.

#### A. Under the TCPA, a User or Subscriber of an Affected Telephone Number has Standing to Pursue a Claim.

The Complaint alleges that defendant's conduct violated 47 U.S.C. § 227(b)(1)(A)(iii). This provision of the TCPA provides in pertinent part that:

[i]t shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice —
> ...
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call....

47 U.S.C. § 227(b)(1)(A)(iii).[1] The statute also creates a "private right of action" which authorizes "a person or entity" to bring a claim to enjoin violation of the statute, or "to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater" or both such actions. 47 U.S.C. § 227(b)(3)(A), (B), (C). Thus, a private person may bring an action in federal or state court to seek redress for violations of the TCPA. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 371, 132 S. Ct. 740, 181 L. Ed. 2d 881 (2012).

In her complaint, Mrs. Chapman plainly alleges that her residential telephone number is (585) 414-XXXX, the number at issue, and that she uses the number "for personal, residential, and household reasons.". *See* ECF No. 1 at ¶ 23, 26. She further alleges that her telephone was registered on that National Do Not Call Registry, but received pre-recorded telemarketing calls from the Defendant.

---

[1] Similarly, the Plaintiff's complaint for violations of the National Do Not Call Registry permits similar statutory claims and recovery. *See* 47 U.S.C. § 227(C)(5).

*Id.* at ¶¶ 25, 28, 29, 24, 34-39. Moreover, Mrs. Chapman's counsel wrote to the

Defendant informing them to stop calling. *Id.* at ¶ 40. However, the Defendant

called Mrs. Chapman's number again. *Id.* at ¶ 42.

Based on the plain language of the statue, Mrs. Chapman has standing.

Indeed, "any person or entity" has statutory standing to bring suit under

the TCPA. *See, e.g., Anderson v. AFNI, Inc.,* 2011 U.S. Dist. LEXIS 51368, 2011

WL 1808779, at *8 (E.D. Pa. May 11, 2011) ("The fundamental point is that §

227(b)(3) unambiguously grants standing to 'any person or entity,' and this grant

does not contradict the rest of the statute.") Indeed, as Judge Murphy held in *Kane*

*v. Nat'l Action Fin. Servs., Inc.,* 2011 U.S. Dist. LEXIS 141480, 2011 WL

6018403, at *7 (E.D. Mich. Nov. 7, 2011) while rejecting a similar motion to

dismiss in a TCPA case:

> Here, Mr. Kane has satisfied the elements of
> constitutional standing. He has alleged an injury-in-fact: the receipt of
> "several hundred phone calls" to his personal cell phone over a four-
> year period. The calls, having been placed by NAFS, are traceable to
> NAFS's actions. And, finally, a favorable decision in this suit will
> redress Mr. Kane's injury by awarding statutory damages to him.

Mrs. Chapman has similarly alleged that her residential telephone number, which

she has placed on the National Do Not Call Registry, was contacted with the

Defendant's unwanted telemarketing calls. As a result, she has standing to bring

suit.

Moreover, while it is not required to be pled, Mrs. Chapman has also made clear that the number is hers. *See* ECF No. 1 at ¶ 23. Mrs. Chapman is the subscriber of the number, and if necessary, an amended pleading can be filed to state that unequivocally.[2] *See e.g. Booth v. Appstack, Inc.,* No. C13-1533JLR, 2016 U.S. Dist. LEXIS 68886, at *21-22 (W.D. Wash. May 24, 2016) ("The court agrees that at least the subscriber at the time the call is placed has standing to assert a TCPA claim, and accordingly the appropriate inquiry for standing purposes is who subscribed to the relevant numbers when Appstack placed the calls.") However, courts have squarely rejected the proposition that the individual's name who appears on the telephone bill, like Mrs. Chapman's does, is required to plead as much to have standing to pursue a claim. *See e.g. Manno v. Healthcare Revenue Recovery Grp.,* LLC, 289 F.R.D. 674, 683 (S.D. Fla. 2013) ("The thrust . . . is that a plaintiff's status as the 'called party' depends not on such technicalities as whether he or she is the account holder or the person in whose name the phone is registered,

---

[2] Similarly, as described above, the Plaintiff's husband answered one of the pre-recorded telemarketing calls identified in the complaint. If this Court does not believe that Ms. Chapman, who owns the telephone line called, has standing, Mr. Chapman should be permitted to be substituted in as a plaintiff through an amended pleading.

but on <u>whether the plaintiff is the regular user of the phone</u> and where the defendant was trying to reach him or her by calling the phone." (emphasis added)).

Mrs. Chapman, the subscriber of a telephone number that received multiple unwanted telemarketing calls, who has alleged that the number is "hers" has sufficiently alleged that she has standing to bring this lawsuit.

### B. Pre-Recorded Telemarketing Calls have been Nearly Universally Recognized by Courts to Establish Article III Standing.

To establish Article III standing, the Supreme Court has held that the plaintiff must establish an injury in fact, traceable to the challenged conduct of the defendant, and a favorable judgment must be likely to redress that injury. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016). An injury in fact exists if a plaintiff shows "he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical." *Id* at 339. (quoting, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351).

Where the injury asserted is an intangible interest, as is the case here, courts are required to examine both the history of the injury and Congressional judgment to determine whether Article III standing is satisfied. *Spokeo*, 578 U.S. at 340-342; *Buchholz v. Tanick*, 946 F.3d 855 6th Cir. 2020 (dismissal of Fair Debt

Collection Act claim for lack of Article III standing affirmed where plaintiff failed to show he suffered a harm Congress intended to prevent or that his injury is analogous to a harm that the common law recognizes). In the case of the TCPA, the common law recognizes claims based on privacy and nuisance and the "solitude of another by committing the 'tort of intrusion upon seclusion," *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.) (citation omitted), and Congress, in passing the TCPA, determined that "[u]nrestricted telemarketing ... can be an intrusive invasion of privacy" and a "nuisance." Pub. L. No. 102-243, § 2, 105 Stat. 2394, 2394 (1991).

Since *Spokeo,* district courts have repeatedly held that plaintiffs who allege under the TCPA that automated or prerecorded telephone calls or text messages invade their privacy or are a nuisance have established Article III standing. *See Adam v. CHW Grp., Inc.,* No. 21-CV-19-LRR, 2021 U.S. Dist. LEXIS 170620, at *1 (N.D. Iowa Sep. 9, 2021) ("The vast majority of post-Spokeo Telephone Consumer Protection Act (TCPA) cases have concluded that the invasion of privacy, annoyance and wasted time associated with robocalls is sufficient to demonstrate concrete injury. Further, most courts find that the receipt of even one unwanted call is generally enough to clear U.S. Const. art. III's low bar for concrete injury. Statutory violations of the TCPA constitute concrete injuries that

confer Article III standing.") Indeed, as the Third Circuit has also explained in holding that receipt of an unanswered prerecorded voicemail was sufficient to confer standing:

> "[C]ourts benefit from straightforward rules under which they can readily assure themselves of their power to hear a case." *Hertz Corp. v. Friend*, 559 U.S. 77, 94, 130 S. Ct. 1181, 175 L. Ed. 2d 1029 (2010). Our opinion today repeats our "understand[ing] that the *Spokeo* Court meant to reiterate traditional notions of standing." *Horizon*, 846 F.3d at 638. And the traditional notion of standing requires only that claimant allege some specific, identifiable trifle of injury. Where a plaintiff's intangible injury has been made legally cognizable through the democratic process, and the injury closely relates to a cause of action traditionally recognized in English and American courts, standing to sue exists.

*Susinno v. Work Out World Inc.*, 862 F.3d 346, 352 (3d Cir. 2017).

Mrs. Chapman alleges at multiple places in her complaint that the calls were an unwanted privacy and nuisance. *See* ECF No. 1 at ¶ 33 (Mrs. Chapman's husband answers the phone to determine who keeps contacting their number that they placed on the National Do Not Call Registry); ¶ 45 ("All class members (including Mrs. Chapman, who is a class member) have had their privacy invaded through receipt of the telemarketing calls." The calls were invasive enough of Mrs. Chapman's privacy that her counsel *sent the Defendant correspondence informing them to stop calling her. Id.* at ¶ 40. The Defendant acknowledged receipt of that correspondence, but continued to call. *Id.* at ¶ 41-42.

The Ninth Circuit's opinion concerning a similar TCPA claim is instructive. In *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037 (9th Cir. 2017), the defendants argued that the plaintiff had not established the concrete injury in fact necessary to pursue his TCPA claim in light of *Spokeo. Id.* at 1042. The Ninth Circuit disagreed, explaining: "[B]oth history and the judgment of Congress play important roles in supporting our conclusion that a violation of the TCPA is a concrete, *de facto* injury." *Id.* at 1043. Specifically, the Ninth Circuit reasoned: "The TCPA establishes the substantive right to be free from certain types of phone calls and texts absent consumer consent. Congress identified unsolicited contact as a concrete harm, and gave consumers a means to redress the harm."  Here, Mrs. Chapman placed her number on the National Do Not Call Registry so she could be free of unwanted telemarketing calls. Despite that, National Health Plans called her number with pre-recorded messages. They continued after she attempted to ignore them, so her husband answered the call to identify who was calling. Mrs. Chapman's lawyer told National Health Plans to stop calling her number and they acknowledged that, but kept calling. Mrs. Chapman's suffered sufficient harm with these unwanted calls.

Defendant's heavy reliance on the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) is wholly misplaced.  *TransUnion*

involved claims under the Fair Credit Reporting Act ("FCRA") for a class who

asserted that they had inaccurate information placed in their credit files in violation

of the FCRA. *TransUnion* states only certain statutory claims that have common

law analogues present a sufficiently concrete injury-in-fact sufficient to support

Article III standing. The Supreme Court however, *drew a distinction between the*

*Fair Credit Reporting Act and the TCPA*, citing a TCPA decision authored by then

Seventh Circuit Judge Barrett, recognizing "intrusion upon seclusion" as a harm

"traditionally recognized as providing a basis for [a] lawsuit[] in American

courts." *TransUnion LLC*, 141 S. Ct. at 2204 (citing TCPA case *Gadelhak v. AT&T*

*Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.), *cert denied*, 209 L. Ed.

2d 568, 2021 WL 1521010 (U.S. 2021)).  *Gadelhak* makes it clear that it is the

nature of the violation of the TCPA that gives rise to Article III standing *because* it

had a common law analogue. *See Gadelhak v. AT&T Servs.*, 950 F.3d at 461-63.

The Sixth Circuit is in accord: "Congress may choose to 'identify[ ] and elevat[e]'

certain intangible, concrete harms by statute," as it has chosen to do with

the TCPA." *In re Amedisys Holding, LLC,* No. 19-0510, 2020 U.S. App. LEXIS

6364, at *3 (6th Cir. Feb. 28, 2020) (citing *Buchholz v. Meyer Njus Tanick, PA*,

946 F.3d 855, 867 (6th Cir. 2020) (in turn citing *Spokeo, Inc. v. Robins*, 136 S. Ct.

1540, 194 L. Ed. 2d 635 (2016)). As with a published violation of inaccurate credit

information, no additional proof of harm (such as listening to the pre-recorded message and being wildly annoyed) is needed to satisfy Article III standing for a class of TCPA call recipients, for which there is no legitimate proof of consent, because of the tie to a recognized common law harm. Mrs. Chapman's telephone line received these unwanted calls, even after her attorney contacted the Defendant asking them to stop, she has sufficiently alleged her harm.

Defendant's reliance on *Smith v. Aitima Med. Equip., Inc.*, 2016 U.S. Dist. LEXIS 113671 at *9 (C.D. Cal. July 29, 2016) is erroneous, as it was subsequently overturned by the Ninth Circuit in *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037 (9th Cir. 2017), which noted that "Congress identified unsolicited contact as a concrete harm, and gave consumers a means to redress this harm," held "a violation of the TCPA is a concrete, de facto injury." *See id.* at 1043. Defendant's reliance on *Shuckett v. DialAmerica Mktg., Inc.*, No. 17CV2073-LAB (KSC), 2019 WL 3429184, at *3 (S.D. Cal. July 30, 2019) is also misplaced because among, other reasons, it was decided on a full evidentiary record on summary judgment.  In fact, in *Shuckett*, at the motion to dismiss stage, the plaintiff alleged that an unanswered call "violated the TCPA, caused her nuisance, and invaded her privacy," and one of the defendants moved to dismiss for lack of standing.  *Shuckett v. DialAmerica Mkting. Inc.*, No. 17-cv-2073, 2019 U.S. Dist.

LEXIS 29598, at *3-4 (S.D. Cal. Feb. 22, 2019).  The court noted that, for purposes of the TCPA, "even a *de minimis* harm confers standing."  *Id*. at *4.  The court therefore concluded that, because it was undisputed that the defendant called the plaintiff and the plaintiff asserted that she was harmed by the unanswered call, the plaintiff had standing to proceed.  *Id*. at *4-6.

Finally, Defendant's reliance on an Eleventh Circuit decision, *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019) should be ignored. In *Salcedo*, the plaintiff alleged a violation of the TCPA based on the receipt of a single unsolicited text message. Most notably, this case does not involve a single text message, but instead the receipt of four pre-recorded telemarketing calls on a number that was registered on the National Do Not Call Registry.  Indeed, the Eleventh Circuit recently addressed TCPA standing for pre-recorded phone calls, like those alleged here, in *Glasser v. Hilton Grand Vacations Co.,* 948 F.3d 1301, 2020 WL 415811 (11th Cir. 2020):

> A real injury remains necessary. But a recent decision, as it happens, resolves the point for the plaintiffs. "The receipt of more than one unwanted telemarketing call," the court concluded, "is a concrete injury that meets the minimum requirements of Article III standing." Cordoba, 942 F.3d at 1270. We appreciate that the point is close, as another decision of the court suggests. See Salcedo v. Hanna, 936 F.3d 1162, 1168 (nth Cir. 2019). But Cordoba resolves it, establishing an Article III injury and giving plaintiffs standing to bring these claims.

If this Court is inclined to follow the Eleventh Circuit, it should follow the

Eleventh Circuit opinion that actually addresses the type of calling conduct in this

case.

The harms alleged here are the exact types of harm courts within this circuit

have found sufficient even after *Spokeo* and are consistent with Mrs. Chapman's

allegations about the calls being unwanted and continuing despite her lawyer

telling the Defendant to stop.

2. **The Plaintiff's Complaint Plainly Alleges that a Pre-Recorded Voice was Utilized to Make the Calls. Furthermore, the Plaintiff's Complaint Provides Sufficient Specificity with Respect to Calls by the Defendant and the Content of those Calls. As such, she has Sufficiently Stated a Claim for Violations of the National Do Not Call Registry.**

Under the TCPA, it is unlawful "for any person ... to make any call [other

than for emergencies or with the recipient's prior express consent] using … an

artificial or prerecorded voice" to a cell phone. 47 U.S.C. § 227(b)(1)(A)(iii). A

plaintiff sufficiently pleads a pre-recorded message claim under the TCPA when

the allegations supply details beyond bare legal conclusions or the recitation of

statutory language, such as the frequency of the calls and their content. *Evans v.

Nat'l Auto Div., L.L.C*., No. 15-8714, 2016 U.S. Dist. LEXIS 29348, at *4-5

(D.N.J. Mar. 7, 2016). Here, the Plaintiff included the content of the pre-recorded

message, including the specific allegation that the answered pre-recorded message

call "asked if the individual was over 65 years old and requested an automated response." *See* ECF No. 1 at ¶ 35. The Plaintiff has alleged that the pre-recorded message asked if the call recipient was interested in a family or individual quote and requested an automated response. *Id.* at ¶ 36. Mrs. Chapman then alleges that the pre-recorded portion of the call ended and that the call transferred to the Defendant, who continued a live solicitation. *Id.* at ¶ 37.

These facts are more than sufficient to put National Health on notice of the claims against it. *See e.g. Neptune v. Whetstone Partners, LLC*, 34 F.Supp.3d 1247, 1250 (S.D. Fla. 2014) (finding sufficient allegations that calls were prerecorded where *inter alia* Defendant called Plaintiff on numerous occasions several times per day, with generic content messages such as a prerecorded voice reminding Plaintiff that his payment was due); *Sojka v. DirectBuy, Inc.,* 35 F. Supp. 3d 996, 1003 (N.D. Ill. 2014) ("The complaint describes in detail five voicemails left for the Sojkas by DirectBuy from August 2012 to November 2012.").

National Health Plans claims Plaintiff's Complaint does not provide sufficient notice of Plaintiff's pre-recorded call claim, but Plaintiff's Complaint, by providing the specifics of the pre-recorded message has done far more than generically allege that Defendant "left pre-recorded messages on his cellular

phone," without "anything else about the circumstances of a call or message." *See Johansen v. Vivant, Inc.*, No. 12 C 7159, 2012 WL 6590551, at *3, *9 (N.D. Ill., Dec. 18, 2012). Rather, Plaintiff's Complaint addresses the "tenor, nature, or circumstances" of the contact. *Manopla*, 2020 U.S. Dist. LEXIS 74792 at *4. Mrs. Chapman alleges that she received the pre-recorded message as part of a cold call solicitation to obtain insurance business and that the recorded messages were left seeking that business. Indeed, Mrs. Chapman alleges that the Defendant has had (a) other people complain about this conduct (ECF No. 1 at ¶ 31) and (b) previously been sued for this conduct (*Id.* at ¶ 21). The Plaintiff's allegations regarding the recorded message are further bolstered by the specifics of the live telemarketer portion of the call, which further inquired about his desire to sign up for the Defendant's insurance services.

These detailed allegations are more than sufficient to put Defendant on notice of the conduct at issue, and to provide a basis for Plaintiff's claims. The Complaint alleges the date, phone number used and content of the pre-recorded message that Defendant is alleged to have sent.

Mrs. Chapman has also provided sufficient detail about the telemarketing efforts to support her National Do Not Call Registry claim. To state a claim for a violation of the TCPA's Do Not Call Registry, a plaintiff must only allege:

that she (1) "received more than one telephone call within any 12-month period," (2) the calls were "by or on behalf of the same entity," and (3) the calls were made "in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5); *Wagner v. CLC Resorts and Developments, Inc.*, 32 F. Supp. 3d 1193, 1197 (M.D. Fla. 2014). FCC regulations provide, in turn, that "[n]o person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered . . . her telephone number on the national do-not-call registry ["DNCR"]." 47    C.F.R.    § 64.1200(c)(2).

*Arcieri v. Suntuity Solar Ltd. Liab. Co.,* No. 20-16292 (FLW), 2021 U.S. Dist. LEXIS 186205, at *16-17 (D.N.J. Sep. 27, 2021). Under the TCPA, whether calls constitute telemarketing is determined based on the caller's underlying purpose in making the calls, regardless of the content of any specific call. See, e.g., *Bennett v. GoDaddy.com LLC*, No. CV-16-3908, 2019 U.S. Dist. LEXIS 59766, at *18-27 (D. Ariz. Apr. 8, 2019) ("The relevant question is Defendant's *purpose* in initiating the calls" (emphasis in original)). A TCPA plaintiff is not required to plead the content of every call or answer more than one call in order to allege that all of a defendant's calls were for the same purpose. As Judge St. Eve, prior to being appointed to the Seventh Circuit Court of Appeals, held in a TCPA case denying a similar motion to dismiss:

Sempris does not dispute that Quality initiated four calls to Toney in December 2012, Sempris & Provell's Reply at 11-12, but contends that Toney "cannot plausibly allege that the three unanswered calls she purportedly received were initiated by Quality for the purpose of marketing Sempris's Budget Savers membership program, because

> Toney does not allege--and cannot allege--that she has any personal knowledge of what the content of those calls would have been." (Sempris & Provell's Reply at 12.)…Sempris submits that Quality "just as easily could have been calling Toney to market the goods or services of another company it contracts with, for the exclusive purpose of confirming Toney's Stompeez order, or for a different purpose altogther" and that "Toney's assertion that that Quality made the three unanswered calls for the purpose of marketing Budget Savers is nothing more than rank speculation." (Sempris & Provell's Reply at 12-13.)
>
> The court disagrees. Toney has alleged that she received and answered a call from Quality in which the caller tried to sell her a Budget Savers membership the day after she received three unanswered calls from Quality. The content and timing of the fourth call allows the court to draw a reasonable inference that Quality made the first three calls to market Sempris's services.

*Toney v. Quality Res., Inc.,* 75 F. Supp. 3d 727, 746 (N.D. Ill. 2014). Here Mrs. Chapman does plead with specificity the content of the calls received, including that the Defendant was offering insurance services based on the call recipient's age. *See* ECF No. 1 at ¶ 35. The Defendant's pre-recorded call also inquired with respect to the type of quote offered an individual or family plan. *Id.* at ¶ 37. When the Plaintiff's husband spoke to a live employee, the solicitation continued with respect to specific offerings of insurance by the Defendant. *Id.* at ¶ 38.  Here, the Court can make the same reasonable inference that was made in *Toney*, as Mrs. Chapman's line received multiple calls from the Same Caller ID in close proximity. As discussed above, individuals complained about receiving solicitations from that same Caller ID. *See* ECF No. 1 at ¶ 31. Indeed, one such

complaint labeled the calls as "Health insurance spam". *Id.* It is more than a reasonable inference that the telemarketing pitches were the same for the other same unanswered calls. In fact, there is no other reasonable inference to be drawn from the circumstances as there would be no other reason for Defendant to be calling Mrs. Chapman, with whom it has no relationship.

The Defendant's reliance on *Greene v. Select Funding LLC,* No. 2:20-cv-07333-RGK-KS, 2021 U.S. Dist. LEXIS 206366 (C.D. Cal. Feb. 5, 2021) does not persuade. As that case had allegations of calls over a 12-month period as opposed to allegations of calls over a shorter period here all from the same Caller ID. Indeed, another Court recently rejected a substantively similar motion to dismiss in a TCPA case last month:

> First, the Companies contend that Mr. Bower's complaint fails to allege that they made the calls or that the calls came at their direction. In their view, it would require an "illogical leap" to find that "because one alleged phone call may have originated with either [Company]," that somehow the six preceding ones did as well. In making this point, they further emphasize that Mr. Bower did not know the identities of these callers either, which they dub a "fatal flaw." As a result, they argue that his allegations are "wildly speculative," factually deficient, and should be dismissed with prejudice….

> But as I see it, the Companies' arguments do little more than mark squares on the hyperbole bingo card. To start, the logical conclusion at this pleading stage *is* that these identical pre-recorded messages came from the same source, especially absent any argument that this pre-recorded message is used industry wide. That Mr. Bower acknowledged he could not identify the caller until he bought a policy

after the seventh call is neither a fatal flaw, nor does it render his pleadings wildly speculative.

*Bower v. Nat'l Admin. Serv. Co., LLC,* No. 4:21-CV-00998, 2022 U.S. Dist. LEXIS 48027, at *5-7 (M.D. Pa. Mar. 17, 2022).

The Court should reach the same decision here and deny the Defendant's motion.

## **CONCLUSION**

For the reasons discussed herein, the Defendant's Motion to Dismiss should be Denied.

Dated: April 27, 22   PLAINTIFF, on behalf of themselves
         and others similarly situated,


        */s/ Anthony Paronich*
        Anthony Paronich
        Email: anthony@paronichlaw.com
        PARONICH LAW, P.C.
        350 Lincoln Street, Suite 2400
        Hingham, MA 02043
        Telephone: (617) 485-0018
        Facsimile: (508) 318-8100

        *Attorneys for Plaintiff*

## **Certificate of Service**

The foregoing document has been filed electronically, is available for viewing and downloading from the ECF system, and has been served on all parties of record via electronic service through the ECF system on April 27, 2022.

*/s/ Anthony Paronich*
Anthony Paronich