UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CRYSTAL CHAPMAN,

    Plaintiff,

v.

NATIONAL HEALTH PLANS &
BENEFITS AGENCY, LLC,

    Defendant.

Case No. 22-10229
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING NHP'S MOTION TO DISMISS [7]**

Crystal Chapman says she received a telemarketing call in November 2021 from an unknown number. Because she did not recognize the number, Chapman rejected the call. (ECF No. 1, PageID.7.) The same number called on December 1, and again, Chapman rejected the call. (*Id.*) But when the third call came on December 28, Chapman's husband decided to answer. (*Id.* at PageID.8.) After all, Chapman had put her number on the National Do Not Call Registry, so her husband wanted to know who was on the other end of the call. (*Id.* at PageID.7–8.) A prerecorded message asked if he was over 65 years old and if he was interested in "a family or individual quote[.]" (*Id.* at PageID.8.) After providing automated responses, he was transferred to a live employee, who offered him insurance services from National Health Plans & Benefits Agency, LLC (NHP). (*Id.*) At this point, he ended the phone call. (*Id.*)

After Chapman's husband spoke to NHP, Chapman's counsel wrote to NHP, telling it to stop calling her phone. (*Id.*) NHP agreed. (*Id.*) Despite NHP's

representation, Chapman says she received a fourth phone on February 2, 2022. (*Id.*) This fourth call was from the same number as the prior three. (*Id.* at PageID.7.)

So Chapman brought this suit against NHP on behalf of a purported class. (ECF No. 1.) She alleges that NHP's four calls to her personal phone violated the prerecorded-message and the Do-Not-Call provisions of the Telephone Consumer Protection Act (TCPA). Chapman alleges that these calls invaded her privacy and the privacy of other class members. (*Id.* at PageID.9.)

In response, NHP filed a motion to dismiss for lack of standing and failure to state a claim. Given the extensive briefing and relevant allegations, the Court considers the motion without further argument. *See* E.D. Mich. LR 7.1(f). And for the reasons set forth below, the Court will DENY the motion to dismiss.

## I. Jurisdiction

The Court begins, as it must, with NHP's challenge to its jurisdiction. *See Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007) ("Subject matter jurisdiction is always a threshold determination."). Specifically, NHP argues that Chapman does not have standing to bring her claims.

### A. 12(b)(1) Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) may challenge a federal court's subject matter jurisdiction through either a facial or factual attack. *Crugher v. Prelesnik*, 761 F.3d 610, 613 (6th Cir. 2014) (citing *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005)). A facial attack tests the pleading's sufficiency, not the veracity of its allegations. *Stout v. United States*, 721

2

F. App'x 462, 465 (6th Cir. 2018). Facial attacks require allegations to be taken as true and construed in the light most favorable to the non-moving party. *United States v. Richie*, 15 F.3d 592, 598 (6th Cir. 1994). NHP takes Chapman's factual allegations as true but attacks their sufficiency, so the Court will follow suit and construe its motion to dismiss as a facial attack.

## B. Standing

To begin, the Court clarifies the scope of the motion to dismiss. Chapman spends some time in her response arguing that the TCPA authorizes users or subscribers of affected phone numbers to bring claims alleging TCPA violations. (*See* ECF No. 10, PageID.74.) But NHP apparently concedes that she has statutory standing, and instead it argues only that Chapman lacks Article III standing. Indeed, statutory standing "does not in isolation create [Article III] standing." *Garland v. Orlans, PC*, 999 F.3d 432, 436 (6th Cir. 2021). In short, where a plaintiff alleges a statutory violation, that plaintiff must also fulfill Article III standing irrespective of the statutory violation. *Id.*

For a plaintiff to have Article III standing, the plaintiff must claim, among other things, to have suffered an injury-in-fact, meaning their injury is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Env't Servs.*, 528 U.S. 167, 180 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

NHP contends that Chapman has failed to sufficiently allege an injury-in-fact because Chapman's alleged harm is neither particularized nor concrete. (ECF No. 7, PageID.43.) The Court will take each element in turn.

### 1. Particularized Injury

For an injury to be particularized, it "must affect the plaintiff in a personal and individual way . . . not in a general manner that affects the entire citizenry[.]" *Gerber v. Herskovitz*, 14 F.4th 500, 506 (6th Cir. 2021) (citing *Lujan*, 504 U.S. at 560 n.1). For example, in *Ward v. National Patient Account Services Solutions, Inc.*, the Sixth Circuit found that the plaintiff fulfilled the particularity requirement because the Fair Debt Collection Practices Act (FDCPA) violation (failure to disclose identity) "affected Ward personally[.]" 9 F.4th 357, 361 (6th Cir. 2021).

Here, NHP claims that Chapman's injury is not particularized because "she has not alleged any facts showing that she suffered any harm whatsoever from any of the four calls." (ECF No. 7, PageID.46.) But this does not construe the allegations in the light most favorable to Chapman. Chapman alleges that NHP's phone calls went directly to her personal phone line. (ECF No. 1, PageID.7.) Chapman also said that after she did not recognize the number, she "rejected" the first two calls, which implies that she was with her phone when the calls were made and that she took the time to screen and reject them. (*Id.* at PageID.7.) And the Court infers that Chapman was annoyed, frustrated, or confused by the calls enough to have her husband answer the third one and have an attorney write a letter to NHP, requesting that it stop

4

calling her. Therefore, the injury affected her individually even if, as NHP argues, Chapman did not answer the calls.

NHP's reliance on *Cox v. Blue Cross Blue Shield of Michigan* does not persuade the Court otherwise. *See* 216 F. Supp. 3d 820 (E.D. Mich. 2016). The *Cox* court found that the plaintiffs lacked standing for their ERISA claim because the fines, which were the alleged injury, were paid by the plaintiffs' insurance companies rather than the plaintiffs themselves. *Id.* at 826. Thus, the injury was too far removed from the plaintiffs and was therefore not particularized. Unlike the plaintiff in *Cox*, NHP's phone calls went directly to Chapman's personal phone line. (ECF No. 1, PageID.7.) No other party suffered that harm on behalf of Chapman. Because the TCPA violations affected Chapman individually, Chapman alleged a particularized injury.

## 2. Concrete Harm

NHP also claims that Chapman has alleged a mere procedural harm rather than a concrete harm because Chapman did not answer any of the four phone calls nor did she plead that she "heard" any of the four calls. (ECF No. 7, PageID.48.) In other words, NHP argues that Chapman does not have standing if her only alleged injury was that NHP violated the TCPA with respect to her phone number.

While close, the Court finds that Chapman alleged something more than a procedural harm. Chapman alleged a statutory violation that parallels traditional, intangible common law injuries, like invasion of privacy, so her harm is concrete and sufficient for standing purposes.

5

Both tangible and intangible injuries can be concrete, i.e., "real . . . not abstract[.]" *Garland*, 999 F.3d at 436. Where a plaintiff alleges that a statutory violation is a concrete intangible injury (as Chapman does here), the Court should rely on congressional judgment and history to determine if the statutory violation rises to the level of a traditional legal harm. *See Ward*, 9 F.4th at 362 (evaluating FDCPA claim for injury-in-fact by comparing whether the violation was similar to common-law harm of invasion-of-privacy).

Undertaking this analysis, courts have found that "Congress is well positioned to identify intangible harms that meet minimum Article III requirements" and that Congress has the power to elevate injuries "previously inadequate in law" and make them "constitutionally cognizable." *Garland*, 999 F.3d at 437. However, while Congress may elevate harms that existed in common law, "it may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *Hagy v. Demers & Adams*, 882 F.3d 616, 622 (6th Cir. 2018).

Here, the alleged TCPA violations reflect a common-law injury elevated by Congress. The TCPA was passed into law in 1991 to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls." S. REP. 102–178 (codified at 47 U.S.C. § 227). It has even been said that the TCPA, which was "enacted . . . to protect consumers from the annoyance, irritation, and unwanted nuisance of telemarketing phone calls, grant[s] protection to consumers' identifiable concrete interests in preserving their rights to privacy and

6

seclusion." *Bowman v. Art Van Furniture, Inc.*, No. 17-11630, 2018 U.S. Dist. LEXIS 207678, at *9 (E.D. Mich. Dec. 10, 2018) (quoting *Aranda v. Caribbean Cruise Line, Inc.*, 202 F. Supp. 3d 850, 858 (N.D. Ill. 2016)). The Sixth Circuit has also recognized that Congress has, through the TCPA, identified and elevated certain intangible, concrete harms. *See In re Amedisys Holding, LLC*, No. 19-0510, 2020 U.S. App. LEXIS 6364, at *3 (6th Cir. Feb. 28, 2020) ("[N]ot all procedural violations open the door to federal court. But *some* do, even when the procedural violation causes only an intangible injury." (emphasis in original)). Indeed, in the context of fax advertisements, the Sixth Circuit has found that "viewing or printing a fax advertisement is not necessary to suffer a violation of the statutorily-created right to have one's phone line and fax machine free of the transmission of unsolicited advertisements." *Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 633 (6th Cir. 2015). Though *Imhoff* was decided a year before *Spokeo*, courts in the Sixth Circuit have recognized that *Imhoff* is consistent with *Spokeo* because occupying a fax or telephone line is a concrete injury. *See, e.g.*, *Swetlic Chiropractic & Rehab. Ctr., Inc. v. Foot Levelers*, 235 F. Supp. 3d 882, 888 (S.D. Ohio 2017).

Turning to history, TCPA violations mirror traditional common-law injuries like invasion of privacy, showing a "close relationship" to a traditional concrete harm. *See Garland*, 999 F.3d at 437; *Meredith v. United Collection Bureau, Inc.*, No. 1:16 CV 1102, 2018 U.S. Dist. LEXIS 62961, at *2, *7–8 (N.D. Ohio Apr. 13, 2018) (finding that multiple automated calls that invaded the plaintiff's privacy were a concrete harm and specifically, that Plaintiff "has done more than allege a technical violation

7

of the TCPA. Her Complaint alleges that the calls wasted her time and annoyed her. . . . [T]he calls . . . caused her distress, and impeded her ability to work.").

This "close relationship" is also present here. Chapman likewise alleges that the four calls placed by NHP to her personal phone line invaded her privacy. (ECF No. 1, PageID.9.) The definition of invasion of privacy is an "[intentional intrusion], physically or otherwise, upon the solitude . . . of another." Restatement (Second) of Torts § 652B; *see also Ward*, 9 F.4th at 362. NHP's calls to Chapman plausibly fit within this definition. Chapman was on the National Do Not Call Registry and she contacted counsel to ask NHP to stop calling her after the third call. (ECF No. 1, PageID.7–8.) NHP continued to call Chapman despite her request. (*Id.* at PageID.8.) And the Court can infer that the calls took up Chapman's time and were distracting based on the allegations that she rejected the first two calls and that her husband answered the third call. (*See id.* at PageID.7–8.) So Chapman had to take specific steps to address the calls.

The Sixth Circuit, however, has found that not all statutory causes of action, even if created for the purpose of protecting common law harms, are sufficiently concrete as pled. *See Ward v. Nat'l Patient Account Servs. Sols.*, 9 F.4th 357, 361–62 (6th Cir. 2021). The *Ward* court found that the FDCPA violation—failure to disclose the debt collector's identity—was not closely related to invasion of privacy, and therefore not a concrete harm. 9 F.4th at 362. The court explained that Ward had alleged that the defendant's failure to disclose its identity had confused Ward, and not that it invaded Ward's privacy. *Id*. The court found that while an unknown caller's

8

failure to disclose its identity might be confusing or misleading, it is not akin to the common law injury of invasion of privacy. This was true even if "one of the purposes of the FDCPA is to stop abusive debt collection practice that contribute to invasions of individual privacy." *Id.* at 362.

Distinct from *Ward*, there is a closer relationship between Chapman's alleged injury (multiple unwanted automated phone calls) and the common law harm of invasion of privacy. The unwanted automated calls gave Chapman a cause of action through the TCPA *and* invaded Chapman's privacy. Chapman made it clear that she did not want telemarketers calling. She did not consent to NHP calling her. (ECF No. 1, PageID.9.) She registered on the National Do Not Call Registry so she would not get telemarketing calls. (*Id.* at PageID.7.) Chapman, through counsel, even contacted NHP after the third call asking NHP to stop. (*Id.* at PageID.8.) By disregarding that and calling her personal phone, NHP intruded on Chapman's private cell phone line. And Chapman has also pled that she addressed the calls in some way by rejecting them, having her husband answer one call, and asking her attorney to write a letter to NHP. Because the statutory violation is closely related to the common-law injury, the Court finds that Chapman's injury resembles a close relationship to common-law harms. Thus, both congressional judgment and history show that Chapman's alleged injuries are concrete for standing purposes.

Resisting this conclusion, NHP relies on several cases to argue that Chapman's injury is "a bare procedural violation, divorced from any concrete harm." (ECF No. 7,

9

PageID.48 (citing *Spokeo v. Robins*, 587 U.S. 330, 341 (2016)).) None persuade the Court to change its conclusion.

NHP first claims that Chapman's alleged injury is "precisely the bootstrapping of a supposed statutory violation that is prohibited under *Spokeo* and *Transunion*." (ECF No. 7, PageID.48.) But while NHP may be correct that *Spokeo* and *Transunion* prohibit a plaintiff from automatically satisfying the injury-in-fact requirement when alleging a statutory violation, the story does not end there. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021). *TransUnion* specifically instructed that some statutory violations qualified as concrete injuries: "Various intangible harms can . . . be concrete. Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits[.]" *Id.* at 2204. And the Supreme Court specifically cited to *Gadelhak v. AT&T Services, Inc.*, a TCPA case where the Court found that "[t]he harm posed by unwanted text messages is analogous to that type of intrusive invasion of privacy." 950 F.3d 458, 462 (7th Cir. 2020). In *Gadelhak*, the plaintiff received five text messages, which is similar to the four calls Chapman received here. *Id.* at 460. The time it takes to read a text message is analogous to the time it took Chapman to screen and reject the calls, and to have her husband answer the third call. So, if anything, the Supreme Court's guidance in this area supports a finding that the TCPA violations alleged in this case present a concrete harm.

Acknowledging that *TransUnion* and *Spokeo* do not flatly prohibit statutory injuries qualifying as concrete harms, NHP then argues that Chapman has not

10

sufficiently alleged invasion of privacy. (ECF No. 7, PageID.49.) NHP relies on *Salcedo v. Hanna* in support of this contention. *See* 936 F.3d 1162 (11th Cir. 2019). In *Salcedo*, the court found that a single text message was not sufficiently analogous to invasion of privacy, so the injury was not concrete. *Id.* at 1171.

*Salcedo* is unpersuasive for at least two reasons. First, the content is distinguishable: this case is about four phone calls, not one text message. Second, the Eleventh Circuit has addressed this exact issue in a later case, *Glasser v. Hilton Grand Vacations Co.*, where the court found that "[t]he receipt of more than one unwanted telemarketing call . . . is a concrete injury that meets Article III standing." 948 F.3d 1301, 1306 (11th Cir. 2020); *see also Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1270 (11th Cir. 2019). Further, *Gadelhak* (the 7th Circuit case described previously that was cited in *TransUnion*) specifically addressed *Salcedo*'s reasoning for finding that a single text was insufficient to show invasion of privacy. *Gadelhak* noted that while *Salcedo* suggested that "the tort of intrusion upon seclusion addressed only invasions of privacy like eavesdropping and spying . . . . We see things differently. Courts have also recognized liability for intrusion upon seclusion for irritating intrusions—such as when telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff." *Gadelhak v. AT&T Servs.*, 950 F.3d 458, 462 (7th Cir. 2020) (internal citations omitted). The *Gadelhak* Court then went on to find that five unwanted text messages is analogous to this type of intrusion of privacy. *Id.*

11

Finally, NHP cites *Dickson v. Direct Energy, LP*, where the court found that a single ringless voicemail message to the plaintiff's cell phone was not a concrete harm. No. 5:18cv182, 2022 WL 889207, at *3 (N.D. Ohio, Mar. 25, 2022). But again, this case does not involve one isolated call. Chapman alleges four prerecorded phone calls, one of which she had her husband answer to determine the caller. And Chapman says she rejected the first two calls, which means she did not just ignore the calls as they came in—she gave her attention to them and decided not to pick them up. As the Court has explained previously, the calls are similar to an invasion of privacy. So Chapman has alleged more here that allows this Court to infer that the calls annoyed her and took up her time, which is a concrete harm separate from the statutory violation.

That said, the Court notes that Chapman's complaint leaves much to be desired. There are only a few factual allegations, which the Court has considered in the light most favorable to Chapman to infer that the calls wasted her time and annoyed her. But if Chapman is ultimately unable to provide evidence that supports this Court's inferences, then the Court will reevaluate whether Chapman has standing.

In sum, the Court finds that Chapman's alleged injury is closely related to the traditional common-law harm of invasion of privacy. Thus, at this stage, Chapman has alleged a concrete injury, and has standing to pursue her claims.

## II. Failure to State a Claim

### A. 12(b)(6) Standard of Review

Because Chapman has standing, the Court now considers NHP's motion to dismiss for failure to state a claim under Rule 12(b)(6). In considering arguments under Rule 12(b)(6), the Court "construes the complaint in the light most favorable" to Chapman and determines whether her "complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Detailed factual allegations are not required to survive a motion to dismiss, *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012), but they must "raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). What is plausible is "a context-specific task" requiring this Court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### B. 12(b)(6) Analysis

NHP claims that Chapman fails to plead a violation under §§ 227(b) and 227(c) of the TCPA.

#### 1. Section 227(b)

Section 227(b) states, in relevant part, that "it shall be unlawful for any person . . . to make a call . . . using any automatic telephone dialing system [ATDS] or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service[.]" 47 U.S.C. § 227(b). NHP claims that Chapman failed to plead that the messages were prerecorded with sufficient factual detail.

13

Courts have required plaintiffs to provide some details describing the prerecorded message: "While plaintiffs cannot be expected to provide specific details about the type of dialing systems used to deliver the calls they receive, it is entirely reasonable to demand that plaintiffs provide sufficient information about the timing and content of the calls they receive to give rise to the reasonable belief that an ATDS was used." *Aikens v. Synchrony Financial,* No. 15-10058, 2015 WL 5818911, at *4 (E.D. Mich. July 31, 2015), *report and recommendation adopted sub nom, Aikens v. Fin.,* No. 15-CV-10058, 2015 WL 5818860 (E.D. Mich. Aug. 31, 2015). The *Aikens* court found that the plaintiff did not provide sufficient detail, explaining that "[i]f she spoke to a human, she has not indicated whether she heard a human voice immediately upon picking up her phone, or whether there was a significant period of 'dead air,' which is generally indicative of the use of an automatic dialer." *Id.*

In *Reo v. Caribbean Cruise Line*, the court similarly found that the plaintiff provided insufficient detail because "[t]here is no description of the content of the calls (or texts) and no information regarding the frequency of the calls or why they believed that an . . . 'artificial or prerecorded voice' was used such as a period of 'dead air' after answering a call or the inability to interrupt a message or to talk to a human being." No. 1:14 CV 1374, 2016 WL 1109042, at *4 (N.D. Ohio Mar. 18, 2016).

But while some factual details are required, courts have made clear that properly pleading a prerecorded message is a low bar. *See Duchene v. Onstar, LLC*, No. 15-13337, 2016 WL 3997031, at *5 (E.D. Mich. July 26, 2016) (finding that the plaintiff gave sufficient detail where he alleged that he "answered the call, no person

14

spoke to him, and he heard nothing[.]"); *see also Lopez v. Quicken Loans, Inc.*, 461 F. Supp. 3d 638 (E.D. Mich. 2020) (finding that the plaintiff provided sufficient detail with respect to prerecording where he alleged that, one, the text messages used an SMS code reserved for automated text messages; two, the calls and messages were generic and nonpersonal; three, the calls included long pauses followed by a clicking sound that indicated the call was being transferred to a live employee, and; four, plaintiff continued to receive text messages and phone calls even after opting out).

Chapman has provided a sufficient level of additional detail such that she plausibly alleged that NHP used a prerecorded voice in its calls to her. Specifically, the allegations read: "[t]he call began with a pre-recorded message. The pre-recorded message asked if the individual was over 65 years old and requested an automated response. The pre-recorded message asked if the call recipient was interested in a family or individual quote and requested an automated response. Mr. Chapman was then transferred to the Defendant and spoke to one of their employees." (ECF No. 1, PageID.8) (internal formatting omitted).) Chapman's complaint presents additional facts beyond the bare assertion that there was an automated call, principally the content of the automated call. *See Aikens*, 2015 WL 5818911, at *4. She also provides the timing of the calls. (ECF No. 1, PageID.7–8); *see also id.* Chapman's claim does not fail merely because it does not specifically refer to beeps or delays, as NHP argues. The pleading standard is not that rigid. Beyond providing sufficient detail about what the call said, Chapman alleged that her husband was given automated prompts and later transferred to an employee, implying that earlier, he was not talking to a live

15

person. In sum, NHP's argument that Chapman inadequately pled a § 227(b) claim fails.

### 2. Section 227(c)

The same is true for the § 227(c) claim. A plaintiff may bring a claim under § 227(c) if they have received "more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed" in § 227(c). 47 U.S.C. § 227(c)(5). One regulation prescribed under § 227(c) is the National Do Not Call Registry, which prohibits "telephone solicitation[s]" to a number that is on the National Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2). The TCPA defines a solicitation as "the initiation of a telephone call . . . [to encourage] the purchase or rental of . . . property, goods, or services." *Id.* So Chapman must plead that she received more than one "telephone solicitation" within a 12-month period.

NHP argues that Chapman has only alleged that she picked up one phone call from NHP, so she only alleges one telephone solicitation as she does not know the content of the other three calls and cannot show they were solicitations. (*See* ECF No. 7, PageID.57.) And because she did not pick up this phone call herself, she did not receive it. (*Id.*) Because the four calls all came from the same phone number, the Court disagrees.

Another court addressed this exact issue in *Spurlark v. Dimension Serv. Corp.*, No. 2:21-CV-3802, 2022 WL 2528098, at *3 (S.D. Ohio July 7, 2022). There, multiple calls allegedly came within a one-month period, leaving prerecorded messages on the plaintiff's phone. *Id.* at *1. The plaintiff ignored the calls, until he finally answered

16

one at the end of the one-month period. *Id.* He had a colleague engage the last call to identify the caller. *Id.* The *Spurlark* court found these allegations to be sufficient to state a claim under § 227(c). *Id.* at *3. Following this guidance, this Court also finds that Chapman plausibly pled a § 227(c) violation, regardless of the fact that no one picked up three of the calls and that her husband picked up one of them.

And while NHP is correct that Chapman only describes one of the four calls in her complaint, the Court must assess the claim in the light most favorable to Chapman. While Chapman does not allege the content of the other prerecorded calls, she has plausibly pled that the other calls were solicitations based on other facts, as the plaintiff did in *Spurlark*. Chapman alleges that all four calls were made from the same phone number. (ECF No. 1, PageID.7.) Further, she states that other individuals have complained about the same caller ID calling for the same purposes. (*Id.*) These factual allegations allow the Court to infer that the other three calls were solicitations, just like the one Chapman's husband answered.

So Chapman has plausibly alleged that her personal phone line received four solicitations in violation of § 227(c).

### III. Conclusion

Accordingly, the Court DENIES NHP's motion to dismiss. (ECF No. 7.)

SO ORDERED.

Dated: August 4, 2022

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE
